_(signature)_

Honorable Gregg W. Zive
United States Bankruptcy Judge

Entered on Docket
January 04, 2019

LEE HIGH, LTD.
Cecilia Lee, Esq.
Nevada Bar No. 003344
Elizabeth High, Esq.
Nevada Bar No. 10082
448 Ridge Street
Reno, Nevada 89501
Telephone:  775.324.1011
Facsimile: 775.499.5976
Email:  c.lee@lee-high.com
Email:  e.high@lee-high.com

Attorneys for Plaintiffs  Leo Drozdoff; Susan Drozdoff;
Russell Fiddyment; Dawn A. Grabowski,
Trustee Of The David A. Cable Living Trust;
Leonard Holmgren 2007 Trust; The LPH 2007 Trust;
Leonard Holmgren; Leonard Holmgren SEP IRA;
Ron Peterson; Lanette Inman; Inman-Peterson Family Trust;
Eric King; Kimberly King; Sarah Metcalf; Brad Metcalf;
 Lauren Metcalf Stevens; Tom Metcalf;
Tom Metcalf IRA; Metcalf Builders, Inc.;
Norman L. Metcalf; Norman And Betty Metcalf
Family Trust; Norman Metcalf IRA;
Mountain West IRA FBO Norman Metcalf IRA

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>STACI J. BAYLISS,<br>            Debtor. | Case No.: BK-N-16-50461-GWZ<br>Chapter 7 Case |
| LINDA BOWMAN, et. al.,<br>            Plaintiffs,<br>        v.<br>STACI J. BAYLISS, an individual, and<br>MICHAEL BAYLISS, an individual,<br><br>            Defendants. | Adv. Pro. No. 17-05045-gwz<br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT MICHAEL BAYLISS**<br><br>Hearing Date:   December 13, 2018<br>Hearing Time:  2:00 p.m. |

This matter came before the Court on the duly noticed <u>Motion for Default Judgment Against Defendant Michael Bayliss</u> (the "Motion"), brought on behalf of Plaintiffs Leo Drozdoff; Susan Drozdoff; Russell Fiddyment; Dawn A. Grabowski, Trustee Of The David A. Cable Living Trust; Leonard Holmgren 2007 Trust; The LPH 2007 Trust; Leonard Holmgren; Leonard Holmgren SEP IRA; Ron Peterson; Lanette Inman; Inman-Peterson Family Trust; Eric King; Kimberly King; Sarah Metcalf; Brad Metcalf; Lauren Metcalf Stevens; Tom Metcalf; Tom Metcalf IRA; Metcalf Builders, Inc.; Norman L. Metcalf; Norman And Betty Metcalf Family Trust; Norman Metcalf IRA; Mountain West IRA FBO Norman Metcalf IRA (collectively, "Plaintiffs"). Cecilia Lee, Esq., LEE HIGH, LTD., appeared on behalf of Plaintiffs.  No opposition to the Motion was filed and served or made at the hearing.  No other appearances were made at the hearing.

The Court has reviewed and considered the <u>Amended Complaint Objecting to Dishcarge of Debtor Pursuant to 11 U.S.C. §523</u> (the "Complaint"), Docket No. 8, the <u>Motion</u> and attached exhibits, the <u>Declaration of Cecilia Lee In Support of Motion</u> (the "Lee Declaration"), Docket No. 83, <u>Notice of Hearing on Motion</u>, Docket No. 84, the certificate of service of these pleadings, Docket No. 85, the papers and pleadings incorporated by reference in the Motion, and the additional papers and pleadings on file in this adversary proceeding and underlying bankruptcy case and related bankruptcy cases, of which the Court takes judicial notice. Fed. R. Evid. 201. The Court considered the Declarations of Norman Metcalf, Dawn Grabowski, Ron Peterson and Russell Fiddyment regarding their qualification as "elders" under Nevada law at the time they made their investments.  Docket Nos. 87-90.  The Court considered the <u>Supplemental Declaration of Cecilia Lee In Support of Motion</u> (the "Supplemental Lee Declaration") in support of an award of attorneys' fees.  Docket No. 92.  The Court considered the arguments and representations of counsel made at the hearing.  In accordance with Fed. R. Civ. P. 52, as adopted pursuant to Fed. R. Bankr. P. 7052, the Court set forth orally and recorded in open court its findings of fact and conclusions of law in support of Judgment and such findings and conclusions are incorporated herein in their entirety by this reference.  These include, but are not limited to the following findings of fact and conclusions of law:

/ / /

**FINDINGS OF FACT**

1.    The Court finds that notice of the Motion was properly given to Defendant and that the Motion and related pleadings were properly served on the Defendant.  Docket No. 85.

2.    The Lee Declaration, exhibits attached to the Motion, the exhibits attached to the Amended Complaint and evidence in the record referred to in the Motion are the evidentiary foundation for the Court's findings.[1]

3.    On April 15, 2016, Staci J. Bayliss ("Debtor" or "Staci Bayliss") filed for voluntary relief under Chapter 7 of the Bankruptcy Code.  Case No. 16-50461-gwz, Bankruptcy Docket No. 1.  At the time Debtor filed her petition, she was married to Defendant.  Bankruptcy Docket No. 107, p. 3 of 12.  On April 16, 2018, Plaintiffs timely filed the Amended Complaint.  Docket  No. 8.

4.    On April 4, 2018, a Decree of Divorce was entered in the First Judicial District Court of the State of Nevada, Case No. 16 DR 1000991B, based on a Joint Petition of Debtor and Defendant.  Motion, Exhibit A.

5.    Following proper service of the Summons and Amended Complaint on Defendant, Fed. R. Bankr. Pro. 7004(b)(1),  Docket No. 14,  the Clerk of the Court filed the Entry of Default against Bayliss.  Docket No. 50.  As established by the docket in this adversary proceeding, Defendant has not filed an answer, sought to set aside the Default or made any other response.

6.    The Court accepted as evidence the offer of proof made at the hearing that the service by regular mail of the Motion, Lee Declaration and Notice of Hearing on Defendant was not returned.

7.    On June 19, 2018, Staci Bayliss and Plaintiffs entered into the Stipulation for Entry of Judgment on Sixth Claim for Relief and to Dismiss Defendant Staci Bayliss (the "Staci Stipulation"), Docket No. 55, in which the parties agreed that "the discharge Staci Bayliss may receive, in whole or in part, will not operate to the benefit of Michael Bayliss pursuant to 11 U.S.C. §524."  Id. at 3.  On June 21, 2018, the Court entered Judgment on Sixth Claim for Relief and

---

[1] All capitalized terms shall have the same meaning as set forth in the Motion.

LEE HIGH, LTD.
448 RIDGE STREET
RENO, NEVADA 89501
(775) 324-1011

3

1  Dismissing Defendant Staci Bayliss With Prejudice.  Docket No. 56.

2      8.      Related bankruptcy cases have been filed for the Investment Funds owned and

3  managed by Defendant and Carrie McAninch.  Docket No. 8, ¶¶8 – 19.  Defendant solicited

4  Plaintiffs as investors in the Investment Funds, including the Subscription Agreements some, but

5  not all, of the Plaintiffs executed and that, along with Nevada statutory rights to redeem, created

6  certain rights in favor of Plaintiffs.  Id., ¶¶20-30.   In addition to defrauding Plaintiffs in their

7  initial investments, Defendant allowed misrepresentations in the offering documents to remain

8  uncorrected as a result of which Defendant continued to receive money, property or services from

9  Plaintiffs by depriving them of the information on which to exercise their rights to obtain control

10  over an Investment Fund and to seek redemption, as a result of which Defendant remained in

11  control over the scheme and continued to pay himself management fees and to pay his accounting

12  firm's fees in the amounts of $1.2 million and $2.3 million, respectively. Id., ¶34, ¶60; ¶77 (similar

13  allegations with respect to transmitting inaccurate financial statements).  The amounts paid to

14  Bayliss and his accounting firm are also supported by the Meridian Advantage Report, Docket No.

15  325, Case No. 16-50042, pp. 18-19. The Subscription Agreement signed by each Plaintiff who

16  executed one is generally the same.  Motion, Exhibit C.

17      9.      The Subscription Agreements generally provide that an Investment Fund would

18  make loans to provide short term or development financing for real estate projects secured by

19  deeds of trust on real property and that the respective Fund would rely on Defendant as manager

20  in securing loans.  These real estate "investments" resulted in Defendant being involved on the

21  side of the borrowers as well as the Investment Fund and subordinating the position of the

22  Investment Fund to the borrower.  Id., ¶¶ 35-39.  The investment properties were unimproved,

23  Defendant borrowed $50 million against those properties, many of the promissory notes were

24  missing or may not have existed, and many of the deeds of trust were foreclosed on.  Id., ¶43.

25      10.     The financial accountings and tax documents provided to Plaintiffs were inaccurate

26  and did not adequately or accurately relay the true financial statement of the Investment Funds,

27  the commingling of funds, the accounting irregularities or the unsubstantiated and unexplained

28  transactions between the entities and the use of investment funds to pay other investors, to pay

1    Defendant and to pay his accounting firm.  Id., ¶¶49-62. These facts are supported by the Meridian

2    Advantage Report, as is the conclusion that Defendant was running a Ponzi scheme.  Docket No.

3    325, Case No. 16-50042, pp. 15, 24-25.[2]  Defendant's accounting license was suspended based, in

4    part, on inappropriate investment dealings with at least one investor, all of which Defendant failed

5    to disclose to Plaintiffs, as well as his ultimate surrender of his license in 2015.  Amended

6    Complaint, ¶¶ 63-68.   Defendant used Investment Fund monies to pay his lawyers and his

7    suspension expenses.  Id., ¶68-70.  Defendant turned a blind eye to the irregularities, the

8    inaccuracies and to his duties to Plaintiffs.  Id., ¶¶73-76.

9         11.    Defendant owed duties to Plaintiffs as their accountant as a fiduciary, including the

10   duty of loyalty, not to engage in self-dealing, to avoid conflicts of interest and to disclose relevant

11   information, all of which he breached.  Id., ¶¶ 81-95.   Defendant is the alter ego of the Investment

12   Entities, which are also one and the same.  Id., ¶¶ 78-79, 54-55.

13        12.    Defendant invoked his Fifth Amendment privilege against self-incrimination and

14   refused to answer questions at his Rule 2004 examination, including questions regarding his

15   representations made in connection with the investment scheme.  Exhibit D.[3]

16        13.    The dates, amounts of investment and entity in which each Plaintiff believed his or

17   her investment was being made are summarized.  Amended Complaint, ¶ 41; Motion, Exhibit E.

18   The amount of each of these investments is substantiated by the proof of claim for each Plaintiff

19   executed under the penalties of perjury.

20        14.    Plaintiffs Norman Metcalf, Russell Fiddyment, Ron Peterson and Dawn

21   Grabowski, trustee of the David Cable Trust, are "elders" as defined by Nevada law and each

22   sustained damages after they reached the age of 60 years.  Docket Nos. 87-90.

23   ───────────────────
24   [2] The Court has also entered an Order Denying Motion to Dismiss, Granting Motion to Amend in
     Adv. Proc. 18-5002-GWZ, Docket No. 158, in which it held at p. 2, ll. 9-13 that for purposes of
25   the hearing on a motion to dismiss, at all relevant times in the factual allegations set forth in the
     complaint, the Wealth Strategies entities were conducting a Ponzi scheme.

26   [3] Defendant confirmed that all movants were his clients except for Brad Metcalf and Sarah Metcalf.
     Motion, Exhibit D, pp. 42-44, 51.  He asserted the Fifth Amendment to virtually all questions about
27   the real estate developments.  Id., pp. 25-39.  He asserted the Fifth Amendment to the nature and
     extent of the work he performed for Plaintiffs, the information he had on their personal wealth, the
28   manner by which he got Plaintiffs' money, what promises were made and whether his accounting
     firm made any representations.  Id., pp. 45 – 51.

15.    Plaintiffs have satisfied the procedural requirements for entry of judgment against Defendant.

16.    Plaintiffs have been damages as a result of Defendant's conduct.

17.    Any Finding of Fact more properly described as a Conclusion of Law shall be deemed a Conclusion of Law.

## CONCLUSIONS OF LAW

18.    Notice of the Motion was properly given to Defendant.

19.    The allegations in the well-pled Amended Complaint are taken as true.  TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).  "An allegation - other than one relating to the amount of damages - is admitted if a responsive pleading is required and the allegation is not denied."  Fed. R. Civ. P. 8(b)(6), made applicable by Fed. R. Bankr. P. 7008.

20.    Each of the tests necessary for entry of a default judgment as set forth in Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986) have been satisfied.  First, Plaintiffs will suffer prejudice if a default judgment is not entered against Defendant because Plaintiffs will otherwise be denied the right to judicial resolution of their Amended Complaint in this action, and consequently, will be denied recourse for recovery.  Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 499 (C.D. Cal. 2003).

21.    The second Eitel test of the merits of Plaintiffs' substantive claims is also met.  On their First Claim for Relief, Plaintiffs must establish (1) an implied misrepresentation or conduct by Defendant; (2) promoted knowingly and willing by Defendant; (3) creating a contrived and misleading understanding of the transaction on the part of the Plaintiffs; (4) which wrongfully induced the Plaintiffs to advance money, property, or credit to the defendant.  Voyatzoglou v. Hambley, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005) (citing In re Dobrayel, 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002)).  To establish a debt is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) for actual fraud, Plaintiffs must prove (1) that Defendant made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving Plaintiff; (4) that Plaintiffs relied on such representations; and (5) that Plaintiffs sustained the alleged loss and damage as the proximate result of the representations having been made.  Citibank

LEE HIGH, LTD.
448 RIDGE STREET
RENO, NEVADA 89501
(775) 324-1011

(S.D.), N.A. v. Eashai, 87 F.3d 1082, 1085 (9th Cir. 1996).

22.     Plaintiffs have established that Defendant made representations in the financial reports and tax documents that he disseminated to Plaintiffs.  Defendant's representations were also by omission, in reckless indifference to the truth of the financial condition of the Investment Funds and the true status of Defendant's professional license, which Plaintiffs alleged as blind indifference.  In re Houtman, 568 F.3d 651 (9th Cir. 1978) (no direct verbal representation is necessary; reckless indifference is sufficient to support a §523(a)(2) claim); Undon Paik v. Lee, 536 B.R. 848 (Bank N.D. Cal 2015) (intent to deceive may be from reckless indifference to the truth).  Because Defendant was the accountant for the Plaintiffs and the accountant for the Investment Funds, and owed professional duties to his clients, Defendant's reckless disregard for the truth as alleged in the Amended Complaint is amply satisfied.  Furthermore, Defendant's intent is established by the scheme that he devised or was instrumental in devising and that he managed and oversaw. The Amended Complaint's allegation that Defendant operated the Ponzi scheme – itself taken as true by Defendant's default – is further supported by the Meridian Advantage Report and this Court's Order Denying Motion to Dismiss, Granting Motion to Amend in Adv. Proc. 18-5002-GWZ, Docket No. 158.  In re Marroquin, 441 B.R. 586 (1020 Bankr. LEXIS 4281 (Bankr. N.D. Ohio) (Ponzi scheme is by definition fraudulent and *per se* nondischargeable, citing In re World Vision, 275 B.R. 641, 656 (Bankr. M.D. Fla. 2002)).  Plaintiffs have adequately demonstrated their justifiable reliance:  Defendant was their accountant, they placed trust and confidence in him, and he held himself out as someone knowledgeable and capable of making the investments for them.  Amended Complaint, ¶¶85-87, 92-93.  The final element of a §523(a)(2)(A), that Plaintiffs suffered damages as a result of Defendant's ongoing representations is also met. Plaintiffs were deprived of exercising their rights under the Subscription Agreements and Nevada law to redeem their investments and from asserting control of the Investment Funds away from Defendant.  Plaintiffs have been damaged in the amount of their investments, which are established by their respective proofs of claim executed under the penalties of perjury.

23.     Because corporate veil of the Investment Funds should be pierced, that the Investment Funds were operated as one and the same and Defendant indirectly benefitted from his

ongoing operation of the Investment Funds through the payment of management fees to him and fees to his accounting firm. In this manner, Defendant received both direct and indirect benefit and the law holds that where the corporate veil is pierced, Defendant need not be the direct beneficiary of his fraud. Arm v. A. Lindsay Morrison, M.D., Inc., 175 B.R. 349 (9th Cir. BAP 1994).

24.    On their Second Claim for Relief for nondischargeable debt arising under 11 U.S.C. § 523(a)(4), specifically "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[,]" the purpose of §523(a)(4) is to address circumstances where "debts [are] incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal action; both classes of conduct involve debts arising from the debtor's acquisition or use of property that was not the debtor's." In re Ritz, 513B.R. 510, 523 (S.D. Texas 2014) (quoting 11 U.S.C. §523(a)(4) and Miller v. J.D. Abrams, Inc., 156 F.3d 598, 602 (5th Cir. 1998)).

25.    To prevail on an embezzlement claim under Nevada law, Plaintiffs have established that Defendant was entrusted with money, property or effects and used or appropriated the money, property or effects or any part thereof in any manner or for any other purpose than that for which it was entrusted. Luckett v. United Title Co., 2015 U.S. Dist. LEXIS87312, *14 (D. Nev. July 2, 2015), citing NRS §205.305; Leavitt v. Elizarde, 2016 U.S. Dist. LEXIS 7857 at *16-17 (D. Nev. January 21, 2016). Plaintiffs have established that, in addition to their initial investments, Defendant obtained money, property or services from Plaintiffs in the form of depriving them of pertinent information on which to exercise their right to seek redemption and exercise control over the Investment Funds. Amended Complaint, ¶34. Defendant also exerted influence and control over the Investment Funds and the real property development entities. Id., ¶78. Defendant exploited Plaintiffs' investments by subordinating deeds of trust in favor of entities in which Defendant had an interest. Id., ¶¶38-39. From 2010 – 2015, Defendant received management fees of $1.2 million and his accounting firm received $2.3 million. Id., ¶ 60.

26.    On their Fifth Claim for Relief, to have a debt excepted from discharge pursuant to 11 U.S.C. § 523(a)(19), Plaintiffs must prove that (1) the debt is for violation of federal or state

securities laws or for common law fraud in connection with the sale of a security; and (2) the debt must be memorialized in a judicial or administrative order, or in a settlement agreement.  Wright v. Minardi, 536 B.R. 171, 192 (Bankr. E.D. Tex. 2015) (citing McGraw v. Collier (In re Collier), 497 B.R. 877, 902 (Bankr. E.D. Ark. 2013); Faris v. Jafari, 401 B.R. 494, 496 (Bankr. D. Colo. 2009)).

27.    In a Consent Order, a copy of which is attached to the Amended Complaint as Exhibit A, the state of Nevada Office of the Secretary of State Securities Division found that WSBM violated NRS 90.570 in failing to make truthful and accurate disclosures in the offering documents and in failing to adequately disclose conflicts of interest.  Amended Complaint, ¶ 32. NRS 90.570 states:

> "In connection with the offer to sell, sale, offer to purchase or purchase of a security, a person shall not, directly or indirectly: (1) employ any devise, scheme or artifice to defraud; (2) make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made not misleading in the light of the circumstances under which there are made; or (3) engage in an act, practice or course of business which operates or would operate as a fraud or deceit upon a person."

28.    Plaintiffs' debts result from the Consent Order by operation of NRS 90.660, which provides that:

> (1) A person who offers or sells a security in violation of …. (d) Subsection 2 of NRS 90.570 ….. is liable to the person purchasing the security.  Upon tender of the security, the purchaser may recover the consideration paid for the security and interest at the legal rate of this state from the date of payment, costs and reasonable attorney's fees, less the amount of income received on the security. ….   Tender requires only notice of willingness to exchange the security for the amount specified.

29.    Pursuant to Nevada law, the elements of an alter ego claim are:

> (1) The corporation must be influenced and governed by the person asserted to be its alter ego[;] (2) There must be such unity of interest and ownership that one is inseparable from the other; and (3) The facts must be such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice.

1    Truck Ins. Exch. v. Swanson, 124 Nev. 629, 635, 189 P.3d 656, 660 (2008); NRS 78.747.   Alter

2    ego is a remedy to pierce the corporate veil that otherwise protects a corporate shareholder from

3    liability for corporate debt. In re Giampeitro, 317 B.R. 841 (Bankr. D. Nev. 2008). Plaintiffs have

4    established that the Investment Funds and real estate development entities were one and the same;

5    Defendant exerted control and influence over them; and maintaining the corporate fiction would

6    be an injustice and sanction a fraud.   Amended Complaint, ¶¶ 54, 78-79.   As such, Defendant is

7    liable for the corporate debt created by the Consent Order.   Nevada law also imposes personal

8    liability on Defendant by operation of NRS 90.660.   In re Kummerfeld, 444 B.R. 28 (Bankr.

9    S.D.N.Y 2011) (judgment from securities fraud violation is nondischargeable when debtor

10    derivatively liable).

11        30.    In In re Civiello, 348 B.R. 459 (Bankr. N.D. Ohio 2006), a state regulatory agency

12    issued a cease and desist order, finding that all sales of investment units the debtor made were in

13    violation of the law.   There was no determination of liability for the violations.   The Bankruptcy

14    Court found that the cease and desist order fulfilled the requirements of §523(a)(19)(B)(iii),

15    reasoning that the type of order or award is not determinative but that the order generates from

16    securities violations.   The Court also found that a debt "result[ed] from" the cease and desist order

17    by operation of state law, which gives rise to a right to a refund for every sale in violation of law,

18    at the election of the purchaser.   Like the state law relied on by the Court in Civiello to find the

19    creation of debt by a cease and desist order, so too here NRS 90.660 creates liability for the sale

20    of a security in violation of the law and the right to recover the purchase price and attorneys' fees

21    at the election of Plaintiffs.   Plaintiffs have thus met their burden of proof with respect to the Fifth

22    Claim for Relief.

23        31.    The Sixth Claim for Relief is for declaratory judgment resolving the issue of

24    whether Debtor's discharge may operate to the benefit of Defendant pursuant to 11 U.S.C. § 524.

25    As the determination of dischargeability of debt is a core proceeding arising under Title 11, this

26    Court has jurisdiction and constitutional power to enter judgment.  28 U.S.C. § 157(b)(2)(I).   "The

27    Code provides that actions of a nonfiling spouse which would render a debt nondischargeable may

28    make the debt nondischargeable as to the community property of the filing spouse."   Midi Music

1   <u>Center, Inc. v. Smith</u>, 140 B.R. 904, 910 (Bankr. D.N.M. 1992) (citing 11 U.S.C. § 524(b)(2)).  In

2   joint cases involving spouses where one spouse has done the act leading to the nondischargeability

3   complaint, courts have held that the dismissal of the innocent spouse does not preclude the creditor

4   from holding after-acquired community property liable for the debt.  <u>Id.</u> at 911 (citing <u>Grimm v.</u>

5   <u>Grimm (In re Grimm)</u>, 82 B.R. 989 (Bankr. W.D. Wis. 1988); <u>Valley National Bank of Ariz. v.</u>

6   <u>LeSueur (In re LeSueur)</u>, 53 B.R. 414 (Bankr. D. Ariz. 1985); <u>Williams v. Bernardelli (In re</u>

7   <u>Bernardelli)</u>, 12 B.R. 123 (Bankr. D. Nev. 1981)).  "'Regardless of whether the community claim

8   was attributable to the actions of the debtor spouse, the nondebtor spouse, or both, the effect of

9   §524(a)(3) is that all community property acquired post-bankruptcy is protected by the

10  discharge.'"  <u>In re Field</u>, 440 B.R. 191, 197 (Bankr. D. Nev. 2009) (quoting <u>Rooz v. Kimmel (In</u>

11  <u>re Kimmel)</u>, 378 B.R. 630, 635-36 (B.A.P. 9th Cir. 2007); <u>see also</u> 2 COLLIER ON BANKRUPTCY ¶

12  524.02[3][a] (Alan N. Resnick & Henry J. Sommer eds., 15th rev. ed. 2009)).

13       32.     Entry of judgment against Defendant in this adversary proceeding is within this

14  Court's core jurisdiction because any discharge entered for Debtor will inure to his benefit,

15  shielding after-acquired community property from the claims of creditors, including community

16  claims based on his wrongdoing.  <u>In re Strickland</u>, 153 B.R. 909, 912 (Bankr. D.N.M. 1993)

17  (citing <u>Gonzales v. Constanza (In re Constanza)</u>, 151 Bankr. 588 (Bankr. D.N.M. 1992); <u>Roman</u>

18  <u>v. Greiner (In re Greiner)</u>, 2014 Bankr. LEXIS 4793, at *17-18 (Bankr. D.N.M. 2014).

19              For a creditor to properly object to the community property discharge
20              accorded spouses in community property states, the proper procedure
                must be followed.  The creditor must proceed against the spouse whom
21              is alleged to have done the wrongful acts, either in his or her own
                bankruptcy case if both spouses have filed, or in a hypothetical case
22              involving the nonfiling spouse if only one spouse has filed.

23  <u>Midi Music Center</u>, 140 B.R. at 910.  It is the duty of creditors to object to the hypothetical

24  discharge of the nondebtor spouse within the time limits set by the bankruptcy court.  <u>Strickland</u>,

25  153 B.R. at 912 (citing <u>In re Karber</u>, 25 Bankr. 9, 12 (Bankr. N.D. Tex. 1982)).  Congress intended

26  under §524(a)(3) that "the guilty spouse should not be able to hide behind the innocent spouse's

27  discharge.  Both spouses will suffer by reason of one spouse's prior 'sins' insofar as after-acquired

28  jointly owned community property is concerned."  <u>In re Braziel</u>, 127 B.R. 156, 158 (Bankr. W.D.

Tex. 1991).  However, §524(a)(3) is not a discharge of personal liability for the nonfiling spouse, but instead provides the nonfiling spouse with the benefit of the filing spouse's discharge injunction.  In re Schmiedel, 236 B.R. 393, 398 (Bankr. E.D. Wis. 1999).  If the debt is hypothetically nondischargeable as to the nondebtor spouse then the community does not receive a discharge and creditors may proceed against after-acquired community property.  Strickland, 153 B.R. at 912 (citing Midi Music, 140 B.R. at 907).  Plaintiffs have sought precisely this relief in this adversary proceeding.

33.    Plaintiffs timely filed the nondischargeability Amended Complaint within the time limits set forth in Rule 4007(c) and extensions granted by the Court.  Bankruptcy Docket Nos. 70, 119, 134, 157, 175, and 202.  The Bankruptcy Court has jurisdiction by 28 U.S.C. §1334(b), 28 U.S.C. §157(a)(1) and (b)(1).  As this adversary proceeding involves a matter determining the dischargeability of particular debts, this is a core proceeding under 28 U.S.C. §157(b)(2)(I).  Therefore, this Court concludes that it may enter appropriate orders and judgments as it deems necessary under 28 U.S.C. §157(b)(1), including declaratory relief that the debts to Plaintiffs are nondischargeable to Bayliss in his hypothetical bankruptcy case under Chapter 7 and to enter a money judgment against Bayliss for Plaintiffs' damages arising from that nondischargeable debt based on the allegations contained in the Amended Complaint.

34.    The third Eitel factor is established by well-pleaded allegations are taken as admitted on a default judgment.  Benny, 799 F.2d at 495 (citing Thomson, 114 U.S. at 114; In re Visioneering Construction, 661 F.2d 119, 124 (9th Cir. 1981)).  "[A] default establishes *well-pleaded* allegations of a complaint unless they are…contrary to facts judicially noticed or to uncontroverted material in the file." Cashco Fin. Servs. v. McGee, 359 B.R. 764, 772 (B.A.P. 9th Cir. 2006) (quoting Anderson v. Air West Inc., 436 F. Supp. 1281, 1285-86 (N.D. Cal. 1977) (emphasis added) (citing Thomson, 114 U.S. at 114)).  Fed. R. Bankr. Pro. 7055 provides a mechanism for a trial court to determine whether alleged facts have been established.  Cascho Fin. Servs., 359 B.R. at 774.  Here, the Amended Complaint is well-pled and outlines the factual evidence that supports the claims for relief requested therein.

35.    Pursuant to the fourth Eitel factor, the Court must consider the amount of Plaintiffs'

request in monetary damages.  <u>Eitel</u>, 782 F.2d at 1471-72.  The First, Second and Fifth Claims for Relief seek judgment against Bayliss in the amount of Plaintiffs' initial and all subsequent investments, plus further interest, attorneys' fees and costs and punitive damages, and damages for elder abuse for those Plaintiffs entitled thereto, and that any judgment is not dischargeable under 11 U.S.C. §523.

36.    For victims of a Ponzi scheme, the amount of damages is equal to the amount of the victim investors' initial investment.  <u>See</u> <u>Donell v. Kowell</u>, 533 F.3d 762, 777 (9th Cir. 2008) ("Up to the amount that 'profit' payments return the innocent investor's initial outlay, these payments are settlements against the defrauded investor's restitution claim.  Up to this amount, therefore, there is an exchange of 'reasonably equivalent value' for the defrauded investor's outlay.").  This is consistent with the relief provided by Nevada securities law in NRS 90.660.  These amounts are established in <u>Exhibit E</u> to the Motion, which summarizes the evidence of Plaintiffs' proofs of claim.

37.    Plaintiffs have also pled the right to damages for elder abuse.  <u>Amended Complaint</u>, ¶¶ 110, 125, 149-150.  According to NRS 41.1395(1), "if an older person …. suffers a loss of money or property caused by exploitation, the person who cased the … loss is liable to the older person … for two times the actual damages incurred[.]"  An "older person" is over the age of 60 years.  NRS 41.1395(4)(d).  If the defendant "acted with recklessness, oppression, fraud or malice, the court shall order the person to pay the attorney's fees and costs of the person who initiated the lawsuit." NRS 41.1395(2).

38.    Here, the Plaintiffs who are "older persons" have established their right to nondischargeable damages pursuant to §523(a)(2)(A), (a)(4) and (a)(19).  Those who are "older persons" are similarly entitled to two times their actual damages and their attorneys' fees and costs.  <u>Cohen v. de la Cruz</u>, 523 U.S. 213 (1998) (the entire debt under state law, included treble damages and attorneys' fees and costs were held nondischargeable).

39.    The fifth <u>Eitel</u> factor considers the possibility that a material issue of fact exists in the case.  <u>Eitel</u>, 782 F.2d at 1471-72.  The allegations of the Amended Complaint are taken as true.  <u>Elektra Entertainment</u>, 226 F.R.D. at 393.  Thus, this factor also supports entry of a default

LEE HIGH, LTD.
448 RIDGE STREET
RENO, NEVADA 89501
(775) 324-1011

1   judgment.

2       40.    Under the sixth <u>Eitel</u> factor, the Court is asked to look at whether the failure of the

3   Defendant to answer or otherwise respond to the Amended Complaint is or may be the result of

4   excusable neglect. <u>Eitel</u>, 782 F.2d at 1471-72. Indisputably, Defendant was properly served with

5   the Amended Complaint and summons. Accordingly, this factor warrants entry of default

6   judgment against Defendant.

7       41.    The final <u>Eitel</u> factor examines the strong public policy of determining cases on the

8   merits whenever possible. <u>Eitel</u>, 782 F.2d at 1472. However, the mere existence of Fed. R. Civ.

9   P. 55(b) "indicates that the seventh <u>Eitel</u> factor is not alone dispositive." <u>Philip Morris</u>, 219 F.R.D.

10  at 501. Where, as in this action, the Defendant has utterly failed to answer or otherwise respond

11  to the Amended Complaint, a decision on the merits is impractical, if not impossible. As such,

12  public policy considerations do not prevent entry of a default judgment herein.

13      42.    Plaintiffs are entitled to attorneys' fees and costs pursuant to NRS 41.580 (statutory

14  entitlement to attorneys' fees for elder abuse) and pursuant to NRS 90.660 (statutory entitlement

15  to attorneys' fees based on violation of Nevada securities law for all Plaintiffs, 11 U.S.C.

16  §523(a)(19)). <u>Cohen v. de la Cruz</u>, 523 U.S. 213 (1998) (the entire debt under state law, included

17  treble damages and attorneys' fees and costs were held nondischargeable). The Court has

18  considered the <u>Supplemental Lee Declaration</u> and concludes that the fees and costs requested for

19  each Plaintiff are reasonable, necessary and appropriate under these statutes. The Court concludes

20  that each Plaintiff is entitled to these fees in the amounts set forth in the <u>Supplemental Lee</u>

21  <u>Declaration</u>.

22      43.    The compensatory damages, elder abuse damages and attorneys' fees and costs

23  awarded to each Plaintiff are summarized in the chart below:

24  ///

25  ///

26  ///

27  ///

28  ///

| Plaintiff | Compensatory Damages | Elder Abuse Damages | Attorney's Fees and Costs | Total |
|---|---|---|---|---|
| Legal Authority | NRS 90.660; <u>Donell v. Kowell</u>, 533 F.3d 762 (9th Cir. 2008) | NRS 41.1395 | NRS 90.660; NRS 41.1395(2) | |
| David A. Cable Living Trust (Dawn Grabowski, Trustee) | $695,394.00 Claim #120 | $1,390,788.00 | $9,017.89 | $2,095,199.89 |
| Leo M. Drozdoff Susan Drozdoff | $157,556.00 Claim #110 | N/A | $2,348.21 | $159,904.21 |
| Russell F. Fiddyment | $221,428.00 Claim #127 | $442,856.00 | $3,300.58 | $667,584.58 |
| Leonard Holmgren 2007 Trust and/or The LPH 2007 Trust and/or Leonard Holmgren | $552,226.00 Claim #102 | N/A | $11,332.32 | $563,558.32 |
| Leonard Holmgren SEP IRA | $270,175.00 Claim #103 | N/A | | $270,175.00 |
| Ron Peterson Lanette Inman | $117,562.00 Claim #128 | $235,124.00 | $6,168.40 | $358,854.40 |
| Inman Peterson Family Trust UA Feb 18, 2004 (Ron Peterson, TTE; Lanette Inman TTE) | $323,321.00 Claim #129 | $646,642.00 | | $969,963.00 |
| Eric King Kimberly King | $82,865.00 Claim #107 | N/A | $1,114.99 | $83,979.99 |
| Brad Metcalf | $30,233.00 Claim #115 | N/A | | $30,233.00 |
| Lauren Metcalf Stevens | None | N/A | | $0.00 |
| Norman Metcalf IRA | $196,066.00 Claim #112 | $392,132.00 | $19,527.22 | $607,725.22 |
| Mountain West IRA, Inc. FBO Norman Metcalf IRA | $776,784.00 Claim #113 | $1,553,568.00 | | $2,330,352.00 |
| Norman & Betty Metcalf Family Trust | $23,975.00 Claim #116 | $47,950.00 | | $71,925.00 |
| Sarah Metcalf | $32,296.00 Claim #117 | N/A | | $32,296.00 |
| Tom Metcalf IRA and/or Tom Metcalf | $227,927.00 Claim #114 | N/A | | $227,927.00 |

LEE HIGH, LTD.
448 RIDGE STREET
RENO, NEVADA 89501
(775) 324-1011

44.     Pursuant to Fed. R. Bankr. Pro. 7054, which incorporates by reference Fed. R. Civ. Pro. 54(b), no just reason exists to delay the entry of Judgment in favor of Plaintiffs as a full resolution of all Claims for Relief in the Amended Complaint on their behalf.

45.     Judgment in favor of Plaintiffs and against Defendant shall be entered consistent with these Findings of Fact and Conclusions of Law.

46.     Any Conclusion of Law more properly described as a Finding of Law shall be deemed a Finding of Fact.

Submitted by:

LEE HIGH, LTD.

/s/Cecilia Lee, Esq.
Cecilia Lee, Esq.
Elizabeth High, Esq.

## **LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that:

_____    The court has waived the requirement set forth in LR 9021(b)(1).

___x___    No party appeared at the hearing or filed an objection to the motion.

_____    As a courtesy, I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

_____    I certify that this is a case under Chapter 7 or 13, that I have served a copy of a form of this order with the motion pursuant LR 9014(g), and that no party has objected to the form or content of the order.

DATED this 21st day of December, 2018.

LEE HIGH, LTD.

/s/ Cecilia Lee, Esq.
CECILIA LEE, ESQ.
ELIZABETH HIGH, ESQ.